[Crim. No. 1036. Third Appellate District.—June 28, 1928.]

THE PEOPLE, Respondent, v. ROLA SINGH, Appellant.

Ray Manwell for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant was convicted in the superior court in and for the county of Yuba of the infamous

crime against nature (Pen. Code, sec. 286), and he appeals from the judgment of conviction and the order denying him a new trial.

The alleged pederastic performance is alleged to have taken place in the city of Marysville, on or about the fourth day of February, 1928. The party upon whom the crime is alleged to have been committed was a boy approaching, if not just past, his majority.

It appears that two police officers while patrolling their "beats" in the neighborhood of Tenth and D Streets in the city above named, at or near the hour of 2 o'clock A. M. of the day, also named above, noticed a Ford coupe parked or standing "in a secluded spot," on the east side of D Street, near Tenth, and facing or heading in a northerly direction. In that immediate vicinity there were no residences. Conceiving that an automobile parked in so unusual a place in the city at that time of the day was a circumstance of more or less a suspicious character, or at least one justifying an investigation, the officers went to the coupe, and, turning a flashlight into the car, found the defendant awake and "crowded right over" the young man referred to, who was asleep and lying across the seat of the coupe on his left side, with his head partly under the steering wheel. The officers testified that the trousers of the young man were down and below the posterior part of his anatomy, that his union undershirt was open behind, that his coat was turned up and that his buttocks were bare or exposed. The officers awakened the young man and, when they attempted to take him from the car, he resisted and started to fight. They arrested and took the two men to the city jail. Suspecting from appearances that the crime charged in the information had been committed, the officers sent for Dr. P. B. Hoffman, a physician of Marysville, and the doctor, immediately after the arrest of the two men—near the hour of 3 o'clock A. M. —appeared at the jail and subjected the anus of the young man and the private parts of the defendant to a critical examination. He took from the private parts of the defendant some filthy matter, placed it in a tin box and caused it to be subjected to a chemical test by the director of the laboratory at the Rideout Hospital in said city. The following day Dr. Hoffman, assisted by Dr. Sloane, a

physician of Marysville, again made an examination of the rectal regions of the young man's anatomy and also the private parts of the defendant and found the physical condition of the young man and to some extent that of the defendant as Dr. Hoffman had found them an hour approximately after the two men were brought to the jail.

The foregoing comprehends a sufficient general statement of the facts.

■ The only point urged here by the defendant for a reversal is that there was an utter failure on the part of the People to show that, assuming that the accused attempted or had an intent to commit the abomination of which he stands convicted, there was effected by the accused a sexual penetration of the young man's anus. Of course, as is true of the crime of rape, to establish the infamous crime against nature it must be shown by the prosecution beyond a reasonable doubt that the accused had effected a sexual penetration of the anus of the party upon whom it is alleged that he satiated his bestial lust. (Pen. Code, sec. 287.) That section of the code, referring to the crime against nature as denounced and penalized by section 286 of said code, declares that "any sexual penetration, however slight, is sufficient to complete the crime."

■ The record discloses sufficient evidentiary support to the verdict. The circumstances revealed by the testimony of the police officers and that of the two medical doctors who professionally examined the body of the young man and the private parts of the defendant within a short time after the latter and his companion were arrested and incarcerated in the city jail—Dr. Hoffman within an hour after the arrest and Dr. Sloan with Dr. Hoffman the following day—point with convincing directness to the guilt of the accused. The condition of unspeakable filth in which the doctors, upon a physical examination of the two men, found the respective parts of their bodies directly employed in the perpetration of the abomination, imperatively forbids, from every consideration of decency, a description thereof in this opinion. We, therefore, purposely refrain from reproducing herein the sickening results of the examination of the parts of the bodies of the two men as the doctors detailed them before the jury. It is enough to say that a reading of all the testimony of the police

officers making the arrest, of the doctors who conducted the appropriate physical examination of the defendant and the young man, and of the testimony of the chemist who subjected to the test of a chemical analysis the filthy feces taken by Dr. Hoffman from the private parts of the defendant, will clearly show that the People, in their presentation of this case to the jury, developed facts and circumstances from which the jury, believing said testimony, as presumptively they did, were justified in inferring and concluding that sexual penetration was effected by the accused. (*People* v. *Howard*, 143 Cal. 316, 317 [76 Pac. 1116].) ██ Obviously, the fact of penetration in a case of this character, as in that of rape, may be shown, as may any other ultimate fact, by circumstantial as well as by direct evidence. Indeed, it is undoubtedly true that in many of such cases as this, as well as of cases of rape, it is essential to prove the fact of penetration by means of circumstantial evidence.

The defense sought to show, by means of hypothetically framed questions to a local physician of Marysville other than either of those above named, that the filth removed from the private parts of the defendant consisted of matter which might naturally accumulate where a person is habitually lacking in cleanliness, so far as his person is concerned, and that the abrasions found by Drs. Hoffman and Sloan in the orifice of the anus of the young man could and might have been produced by certain causes other than that which, in the opinion of the physicians and the chemist testifying for the People, produced the conditions from which their opinions were formed. The most that can be said of the testimony thus presented by the defendant is that it created a substantial conflict in the evidence, the probative effect of which was solely for the jury's determination.

Both the young man and the defendant testified for the defense. The first named stated that he was under the influence of liquor when arrested and the defendant testified that he was more or less in a like condition. The former declared that he had no recollection of anything which might have occurred prior to his arrest or thereafter until he found himself early in the morning of his arrest at the police station. He remembered having been sub-

jected to a physical examination by Dr. Hoffman. He denied having permitted the accused to treat him in the manner indicated by the charge in the information. The accused denied having committed the offense 'charged. All this testimony was for the jury to consider in comparison with that introduced by the People showing circumstances which, as before we have stated, strongly support the truth of the charge against the accused. No sound reason has been shown why the judgment and the order should not stand, and, accordingly, both are affirmed.

Plummer, J., and Finch, P. J., concurred.